# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBYN M. KITT, INDIVIDUALLY AND )
AS PARENT AND NATURAL GUARDIAN )
OF J.R., A MINOR, )
                                   )
                Plaintiff, )           Civil Action No. 15-225
                                   )           Judge Nora Barry Fischer
        v. )
                                     )
THE CITY OF PITTSBURGH, ET AL. )
                                     )
             Defendants. )

## MEMORANDUM OPINION

In this civil action, Plaintiff asserts various claims related to the police investigation of a bank robbery, as well as her eventual arrest and trial therefor. She brings suit against the City of Pittsburgh, former Chief of Police Nathan Harper, Director of Public Safety Michael Huss, Acting Chief Regina McDonald, and Officers Antonio Ciummo, Alisa Duncan, and Leonard Duncan.[1] Her Second Amended Complaint asserts claims, on behalf of her and her minor child, pursuant to 42 U.S.C. § 1983 and various state law torts. (Docket No. 53). Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint (Docket No. 70), which rests primarily on Plaintiff's settlement and release in an earlier case (the "Release"), captioned *Kitt v. City of Pittsburgh*, No. 14-65 (W.D. Pa) ("Skweres Complaint" or "Skweres litigation"). The Court heard oral argument on September 15, 2015. (Docket No. 67). Then, by Order dated December 29, 2015, the Court issued notice that the Motion to Dismiss, to the extent that it was based on the Release, would be considered pursuant to Fed. R. Civ. P. 56.[2] (Docket No. 72). The

---

[1] Defendants affiliated with First National Bank, the institutional victim of the robbery, were voluntarily dismissed from the case on August 17, 2015. (Docket No. 51).

[2] Defendants' Motion was converted in accordance with the mandate that when "matters outside the pleadings [here, the Release] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In response, Plaintiff raised no challenge to the Release that would

issues have been fully briefed, and the Motion is now ripe for review. Upon such review, Defendants' Motion will be granted in part and denied in part.

## A. APPLICABLE STANDARDS

### a. Fed. R. Civ. P. 56

Because a portion of Defendants' Motion to Dismiss relies on a document external to the Second Amended Complaint, and the parties have been afforded appropriate notice and an opportunity to submit pertinent materials, the Court considers that portion of the Motion under Federal Rule of Civil Procedure 56. Pursuant to that Rule, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *United States v. Omnicare, Inc.*, 382 F.3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### b. Fed. R. Civ. P. 12(b)(6)

The remainder of Defendants' Motion will be considered under Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant this Rule, courts must "accept all

---

require additional factual development; instead, as discussed in the body of the Memorandum Opinion, she relies on arguments that neither allow nor require consideration of facts outside of the pleadings and Release language. Likewise, Defendants' Motion relies solely on matters of record. Courts routinely apply Rule 56 under such circumstances. *Cf., e.g., Dando v. Bimbo Food Bakeries Distrib., LLC*, 2015 U.S. Dist. LEXIS 132038 (D.N.J. Sept. 29, 2015); *Brown v. Am. Home Prods. Corp.*, 2009 U.S. Dist. LEXIS 82964 (E.D. Pa. Sept. 10, 2009).

factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotation and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004). Similarly, a court need not accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 555.

### B. BACKGROUND

Plaintiff avers that a bank robbery occurred on February 14, 2013. On February 20, 2013, following investigation by Defendants, Plaintiff was arrested and charged in connection with the robbery. She was brought to trial, and a jury acquitted her of all charges on January 9, 2014.

Approximately one week after her acquittal, on January 16, 2014, Plaintiff filed the Skweres Complaint in this Court. Therein, she brought claims against the City of Pittsburgh, Director of Public Safety Michael Huss, former Chief of Police Nathan Harper, and former Assistant Chief of Operations William Bochter. Plaintiff averred that officer Adam Skweres sexually assaulted her on February 11, 2012, and that she reported him to the FBI on that date. She claimed that Defendants' conduct with regard to Skweres and assaults by officers caused the

violation of her civil rights. The Skweres Complaint focused entirely on circumstances surrounding the alleged assault, and did not address any events relating to the bank robbery.

Subsequently, on July 11, 2013, Plaintiff signed the Release in the Skweres litigation. The Release provided, in pertinent part, as follows (with emphases added):

> [Plaintiff agrees to] hereby completely release and forever discharge the City, as well as any and all agents, servants or employees of the City and any related, affiliated, or subsidiary entities of the City . . . from any and all past, present or future liability, claims, causes of action, damages… obligations or demands of any kind whatsoever, in law or in equity, whether based on a tort, or other theory of recovery, which I ever had against the Defendants, now have, or which I may have in the future . . . <u>arising or which may arise as a result of or in any way connected with the incident which is the subject of the action filed at Civil Action No. 2:14 cv 00065, . . . and the consequences thereof, known or unknown, foreseen or unforeseen, . . . together with any and all other claims or damages that arise from or are in any manner related, either by origin or aggravation, to the incident of February 11, 2012</u>….
>
> IT IS SPECIFICALLY UNDERSTOOD AND AGREED that this General Release and Settlement Agreement shall be a full, binding and complete settlement between the parties. The consideration set forth above is accepted in full and complete satisfaction and discharge or any and all such claims, rights, damages, demands, causes of action or liability of any nature whatsoever connected with the incident . . . .
>
> \* \* \* \*
>
> THE RELEASOR FULLY UNDERSTANDS the terms of this General Release and Settlement Agreement and there is no written or oral understanding or agreement directly or indirectly connected with this General Release and Settlement Agreement that is not incorporated herein.
>
> \* \* \* \*
>
>  . . . IT IS AGREED that counsel for the Releasor shall file a Stipulation of Dismissal in the United States District Court for the Western District of Pennsylvania. <u>IT IS AGREED AND UNDERSTOOD that the Stipulation of Dismissal shall indicate and provide for the dismissal with prejudice of all claims which were or could have been asserted in connection with the above noted Civil Action.</u> By the Execution of this General Release and Settlement Agreement, the Releasor authorizes her counsel to execute this Stipulation on her behalf and thereby authorizes her counsel to file the Stipulation with the Court to be entered as a matter of record.

On February 18, 2015, Plaintiff filed her initial Complaint in this matter, on her behalf and on behalf of her minor child. The Complaint alleged that she was falsely arrested on charges relating to the robbery, and that on January 9, 2014, a jury acquitted her of all charges. The Complaint recounted the sexual assault by Skweres, and alleged that because she reported Skweres for the assault, Defendants wrongfully targeted her as a suspect following the bank robbery.[3] More specifically, Plaintiff alleged that Defendants "focused exclusively on Plaintiff . . . as a result of Plaintiff reporting one of the 'brotherhood,' Skweres to the FBI and Skweres subsequently being arrested, charged and imprisoned."

In the Second Amended Complaint now before the Court, however, Plaintiff has excised all explicit references to Skweres and her report to the FBI. Only their ghosts remain, as in Plaintiff's allegation that Defendants retaliated against her because they knew that she had "engaged in conduct that the City Defendants knew and understood constituted her opposition to and challenging of police action." Similarly, her civil conspiracy claim is based on an alleged conspiracy to further the "brotherhood" and "good old boys network" of police. Elsewhere, the Second Amended Complaint ascribes to Defendants motives unrelated to Skweres — *i.e.*, that the police retaliated against and targeted her for identifying possible suspects who happened to be police informants, and did so in an effort to protect those informants and to meet quotas.

---

[3] As Plaintiff correctly asserts, and as the Court stated during oral argument on September 15, 2015, her initial Complaint is no longer at issue. Thus, the Court rejects Defendants' contention that Plaintiff's earlier allegations should be deemed judicial admissions. "When an amended complaint does not reference or incorporate the prior complaint, the modified complaint functions as the operative complaint, superseding the prior complaint in its entirety." *McAllister v. Wiekl*, 2014 U.S. Dist. LEXIS 24832, at *8 (M.D. Pa. Feb. 27, 2014) (citing *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165 (3d Cir. Pa. 2013). It is true that in *West Run*, the Court stated that factual allegations in a superseded complaint may be considered rebuttable evidence on summary judgment. Such evidence is not pertinent to the outcome here, however, as the Court is tasked solely with resolving the legal issue of whether the Second Amended Complaint is barred by the Release, and contradictory factual allegations are not relevant thereto. Accordingly, in today's Memorandum Opinion, the Court recounts Plaintiff's allegations in the initial Complaint by way of background only. As the Court suggested at oral argument, and consistent with *West Run*, Defendants may raise pleading inconsistencies at a later stage in the litigation.

Plaintiff also attributes the course of events to racial bias, based on her status as a white woman involved in a relationship with a black man.

## C. RELEASE

The parties do not dispute that the Release is to be assessed by reference to Pennsylvania law. Therefore, the Court will apply basic contract principles to the evaluation of the parties' agreement. *McGowan Investors LP v. Frucher*, 392 Fed. Appx. 39, 45 (3d Cir. 2010). According to those principles, in the absence of a situation such as ambiguity, fraud, or mistake, the Court is bound to examine the plain language of the settlement and release at issue. *Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.*, 27 Fed. Appx. 94, 99, 100 (3d Cir. 2002); *Republic Ins. Co. v. Paul Davis Sys.*, 543 Pa. 186, 189 (Pa. 1995); *Bernsten v. Bain*, 2009 Phila. Ct. Com. Pl. LEXIS 89, at *6 (Pa. C.P. 2009). "The intent of the parties must be sought from a reading of the entire instrument, as well as from the surrounding conditions and circumstances." *Vaughn v. Didizian*, 648 A.2d 38, 40 (Pa. Super. Ct. 1994). Extrinsic and parol evidence, however, cannot be used to create an ambiguity in a written agreement that is clear, complete, and unambiguous. *Mosaid Techs. Inc. v. LSI Corp.*, 2015 U.S. App. LEXIS 18912, at *15 (3d Cir. Oct. 30, 2015). Moreover, it is an important principle of contract law that the court is to give effect to all the language of a contract, whenever possible. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 326 (3d Cir. 2005); *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 366 (E.D. Pa. 2014).

In Pennsylvania, it is well settled that if the contract language is clear and unambiguous, a party's unilateral intent not to release a particular claim is not relevant. *E.g.*, *Ford Motor Co. v. Buseman*, 954 A.2d 580 (Pa. Super. Ct. 2008); *Mackay v. Sauerland*, 686 A.2d 840, 843 n.3 (Pa. Super. Ct. 1996). Instead, the parties' intent must be discerned solely from the plain meaning of the words used. *Bain*, 2009 Phila. Ct. Com. Pl. LEXIS, at *6. This is particularly true when

parties were represented by skilled attorneys in connection with the settlement and release.  *M.P. v. Penn-Delco Sch. Dist.*, 2015 U.S. Dist. LEXIS 157000, at \*9 (E.D. Pa. Nov. 20, 2015).  In proceeding, the Court is mindful of "a public policy that encourages settlements and stresses finality," but also that releases are to be construed strictly so as not to bar claims not contemplated at the time of the settlement.  *Stroehmann Bakeries, Inc. v. Workers' Comp. Appeal Bd. (Plouse)*, 768 A.2d 1193, 1196 (Pa. Cmwlth. 2001); *Didizian*, 648 A.2d at 40.

As a threshold matter, therefore, the Court considers whether the Release language is plain and unambiguous.  "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).  A court will "not . . . distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."  *Id*.  Moreover, extrinsic evidence may not be used to create an ambiguity where none exists on the face of the agreement. *See IBEW Local Union No. 102 v. Star-Lo Elec., Inc.*, 444 Fed. Appx. 603 (3d Cir. 2011).

Here, as the parties have acknowledged, the language of the Release is plain and unambiguous.  Plaintiff — as well as most of the case law to which she cites, and the pertinent discussion at oral argument on September 15, 2015 — focuses on the Release's language releasing claims arising out of, or connected with, the subject matter of the Skweres Complaint. The Release, however, also provides for the discharge of claims that "could have been asserted" in the Skweres litigation.  The two provisions exist in harmony; in other words, it is eminently reasonable to read the Release as pertaining to claims arising out of and connected to the Skweres incident, and also claims that could have been brought in the Skweres litigation. Moreover, while the latter clause uses the term "dismissal" and the former uses the term

"release," the words "dismiss" and "release" are synonymous. "Dismiss" *Roget's 21st Century Thesaurus, Third Edition* (2009). Absent inconsistency or conflict, the presence of both specific and general language does not produce ambiguity. The Court notes, too, that the Release, which was captioned a "General Release," contains no exclusionary language or carve-out that might apply to the present claims. Further, the Release provides that it sets forth the parties' entire agreement. There is no consideration that would preclude straightforward application of the Release, read as a whole, and with the required efforts to give effect to all of the contractual terms and avoid strained contrivance.[4] Accordingly, the plain meaning of those terms must be given effect, and the Court must address whether the claims asserted here are those that "could have been asserted" in the Skweres litigation.

In *American Lumber Corp. v. Nat'l R.R. Passenger Corp.*, 886 F. 2d 50 (3d Cir. 1989), the Court of Appeals for the Third Circuit examined facts analogous to those of the case at bar. In that case, the Court considered whether the plaintiff's general release of an earlier civil rights

---

[4] Because there is no suggestion of fraud, accident, or mutual mistake here, and the contract is not ambiguous, the Court need not consider extraneous evidence of intent. In any event, the Court notes that Plaintiff has proffered evidence only of the absence of expressed intent – in other words, she asserts that the release of claims related to her arrest and prosecution, despite the fact that those events had occurred prior to entry into the release agreement, was never discussed during settlement negotiations. Similarly, contrary to Plaintiff's assertion, it is not appropriate for the Court to consider the amount of the Skweres settlement when assessing the parties' agreement. Indeed, it is emphatically not for the Court to second guess the monetary sufficiency of an agreed-upon settlement. "Settlement of matters in dispute are favored by the law and must, in the absence of fraud and mistake, be sustained. Otherwise any settlement agreement will serve no useful purpose." *Greentree Cinemas, Inc. v. Hakim*, 432 A.2d 1039, 1041 (Pa. Sup. Ct. 1981).

> It is a well settled doctrine that settlement agreements are a highly favored judicial tool. . . [C]ourts are loathe to second guess or undermine the original intention of the parties to a settlement agreement. If it were the role of courts to re-evaluate settlement agreements, the judicial policies favoring settlements would be useless. . . . [I]f all of the material terms of the bargain are agreed upon, the court will enforce the settlement.

*In re Estate of Misko*, 2002 WL 372943, at *3 (Pa. Ct. Com. Pl. Phila. Jan. 14, 2002) (citations and quotations omitted). *See also Ogle v. Columbia Gas Transmission, LLC*, 2014 WL 3895500, at *3 (S.D. Ohio Aug. 8, 2014) ("The parties ultimately choose the terms on which they will settle . . . it is not the Court's job to second-guess that decision . . . ."); *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *3 (S.D.N.Y. Aug. 20, 2013) ("[T]he Court finds [the amounts paid to parties and counsel] justifiable and the result of arm's length negotiations that the Court will not second-guess.").

claim barred him from bringing a subsequent contract claim against the same defendant.[5]  The first action claimed racial discrimination in the process of awarding contracts; the second resulted, separately, from nonpayment under written contracts for the sale and purchase of railroad ties.  *Id.* at 51-52.   The Court observed both that the parties' settlement agreement released claims that plaintiff "could have asserted" in the specifically identified discrimination suit, and that the contract claims brought in the second litigation had ripened by the time the release was executed.  *Id.* at 53-54.  The Court then stated as follows:

> Under the Federal Rules of Civil Procedure, there was no procedural bar which would have prohibited [plaintiff] from including the contract claims in his discrimination suit against [defendant].  The liberal amendment of pleadings permitted by Fed.R.Civ.P. 15 would have allowed [plaintiff] to amend his complaint to include the ripened contract claims. Following this policy of liberal amendment, we have permitted the amendment of complaints even years after the filing of the original lawsuit.  The "touchstone is whether the non-moving party will be prejudiced if the amendment is allowed."  [Plaintiff] does not allege—nor is there any evidence in the record—[defendant]  would have been prejudiced by [plaintiff] amending his discrimination suit to include the contract claims of which both parties were fully cognizant at the time of the release. . . .
>
> Moreover, Rule 18 of the Federal Rules of Civil Procedure permits a party to join as many legal, equitable or even maritime claims as the party has against the opposing party. These claims can be independent or alternate claims to the original complaint.

*Id*. at 54 (citations omitted).

As a result, the court found that plaintiff "could have asserted" his contract claims in the settled discrimination suit, and that the release agreement barred him from pressing those claims in the second suit.  *Id*. at 55.

As to Plaintiff's claims on her own behalf against the City of Pittsburgh, as well as Defendants Huss and Harper, the analysis in *American Lumber* compels a similar result here.  Again, the present Plaintiff agreed to file a stipulation dismissing, broadly, "all claims which

---

[5] In *American Lumber*, plaintiff's assignee, rather than plaintiff, brought the contract claim.  The assignee stood in the settling plaintiff's shoes, however, and its status as assignee was immaterial to the Court's analysis.  For purposes of clarity, therefore, the Court refers to both the assignee and the settling plaintiff as "plaintiff."

were or could have been asserted in connection with the [Skweres litigation]."[6]    This unambiguous language does not suggest that a claim, to fall within the ambit of the Release, must share any factual relationship with the settled litigation.  Moreover, it is clear from the face of Plaintiff's Second Amended Complaint that she was investigated and charged in connection with the robbery, and acquitted of those charges, approximately six months <u>prior</u> to executing the Release.    Plaintiff and her counsel—who is, the Court notes tangentially, both experienced and capable—were aware of that series of events well before the Release was executed.[7]    Further, the claims based on that series of events, and now asserted, had already accrued and ripened.  Neither Plaintiff nor the record suggest any matters of prejudice or procedure that would have precluded her from asserting such claims in the Skweres litigation.  Instead, Fed. R. Civ. P. 18 would have permitted Plaintiff to bring all of her then-existing claims against the City, and Defendants Harper and Huss—all named defendants in the Skweres litigation—in that litigation.  In sum, it is inescapable that the Second Amended Complaint's claims against these Defendants "could have been asserted" therein.    It is likewise inescapable, therefore, that those claims were released by the parties' agreement.[8]

The Court reaches a different conclusion, however, regarding Plaintiff's individual capacity claims against Defendants Regina McDonald, Antonio Ciummo, Alisa Duncan, and Leonard Duncan.  As Plaintiff suggests, it is appropriate to inquire whether these Defendants

---

[6] Plaintiff did not file a stipulation in accordance with this provision, and the Court statistically closed the docket in anticipation of the stipulation.  The agreement to do so, however, is part and parcel of the plain language of the Release.  *See* page 5 *infra.*

[7] Although the Court's decision today does not rely on the identity of the scrivener, the Court notes that at oral argument, it was represented to the Court that Plaintiff's counsel drafted the Release.  (Docket No. 67).  The same counsel has proffered in the instant case an affidavit dated July 30, 2015, indicating that at the time of the Release, he was aware of the claims now asserted.  (Docket No. 42-2).

[8] This finding is likewise fatal to Plaintiff's official capacity suits against the individual officers, as an official capacity suit is the same as suit against the municipality. *See Sutton v. City of Philadelphia*, 21 F. Supp. 3d 474 (E.D. Pa. 2014).  To permit the official capacity claims to go forward would circumvent the plain language of the Release, which precludes Plaintiff from bringing her claims against the City.

could have been joined in the Skweres litigation, as "case law frequently looks to permissive joinder law to construe [terms such as "could have been brought"]." *Peterson v. Regina*, 935 F. Supp. 2d 628, 636-37 (S.D.N.Y. 2013). Permissive joinder is governed by Federal Rule of Civil Procedure 20(a)(2), which states, in pertinent part:

> Persons . . . may be joined in one action as defendants if:
>
> (A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrences; and
>
> (B) Any question of law or fact common to all defendants will arise in the action.

At this juncture, under applicable standards, it appears that Plaintiff could not have joined in the Skweres litigation her claims against Defendants Regina McDonald, Antonio Ciummo, Alisa Duncan, and Leonard Duncan. First, these Defendants were not parties to that litigation. Second, Plaintiff's Second Amended Complaint, in its present shape, does not arise out of the same transaction or occurrences as the Skweres litigation; nor does it share any question of law or fact common to the Skweres litigation. Viewed under applicable standards, Plaintiff's suit rests on her arrest and prosecution for bank robbery, and is unrelated to the assault that was the subject of the settled lawsuit. In other words, had Plaintiff brought the present claims in the Skweres litigation, it is likely that Defendants Regina McDonald, Antonio Ciummo, Alisa Duncan, and Leonard Duncan would have been misjoined. The Court finds, therefore, that the Release does not extend to those claims as presented in the Second Amended Complaint. *See, e.g.*, *Twine v. Four Unknown N.Y. Police Officers*, 2012 U.S. Dist. LEXIS 176048, at *33 (S.D.N.Y. Dec. 12, 2012).

Plaintiff's protestations regarding her intent, and the concept of indignities suffered as the result of enduring criminal charges that ended in acquittal, do not fall on deaf ears. Likewise, the Court is sensitive to the Plaintiff's allegations regarding the police practices at issue.

Nonetheless, allowing her to proceed on the entirety of her Second Amended Complaint would require nullifying plain, unambiguous, and agreed-upon language, and the Court is bound by well-settled law to do otherwise.[9]  Thus, even viewing the matter in the light most favorable to Plaintiff, the Court concludes that there are no circumstances that would allow this Court to disregard the plain language of the Release, and there is no genuine issue of fact or law that precludes the entry of judgment in favor of the City of Pittsburgh, and Defendants Huss and Harper.   Viewing the Second Amended Complaint in the required light, however, the Court also concludes that the individual capacity claims against the remaining officers were not released, and shall remain extant.

### D.  MINOR PLAINTIFF'S CLAIMS

Finally, there remains the matter of the claims brought on behalf of Plaintiff's minor child, in Counts VI through X of the Second Amended Complaint.  The minor Plaintiff was not a party to the Skweres litigation, and, generally speaking, a parent may not give a binding release of a minor's claim.  *See*, *e.g.*, *Myers v. Sezov*, 1966 Pa. Dist. & Cnty. Dec. LEXIS 343 (Pa. C.P. 1966); *see also Shaner v. State Sys. of Higher Educ.*, 1998 Pa. Dist. & Cnty. Dec. LEXIS 20 (Pa. C.P. 1998).   Accordingly, the Release does not affect the minor Plaintiff's ability to bring suit.

Count VI sets forth the minor Plaintiff's claim pursuant to *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  "Regardless of any policy or practice a municipality may have adopted . . . liability under *Monell* requires an underlying

---

[9] The Federal Courts encourage parties to settle their disputes.  *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Lit.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly . . . where substantial judicial resources can be conserved by avoiding formal litigation."); *Shaw v. Botens*, 403 F.2d 150, 155 (3d Cir. 1968) ("[I]t is fundamental that the law favors settlements."; *Spark v. MBNA Corp.*, 157 F.Supp.2d 330, 338 (D. Del. 2001) ("[O]ur courts favor settlement of litigation . . . .").  In addition, this Court employs a robust ADR procedure.  *See* UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF PENNSYLVANIA ADR PROGRAM INFORMATION, http://www.pawd.uscourts.gov/adr-program-information.

constitutional violation." *Corliss v. Lynott*, 2016 U.S. Dist. LEXIS 1142, at *36 (M.D. Pa. Jan. 5, 2016). Similarly, Count VII sets forth a claim captioned "supervisory liability." Supervisory liability in this context attaches via a *Monell*-type claim, and Counts VI and VII are coextensive. *See*, *e.g.*, *Garay v. Colasardo*, 2015 U.S. Dist. LEXIS 91709, at **20-21 (M.D. Pa. July 15, 2015).

At this juncture, the pleading is wholly unclear regarding which constitutional rights of the minor Plaintiff – as opposed to Plaintiff on her own behalf – are at issue, and Plaintiff's brief does little in the way of clarification. All of Defendants' complained-of acts were allegedly directed towards Plaintiff, with incidental effect on her minor child. Considering the allegations of the Second Amended Complaint in the light most favorable to the minor Plaintiff, they may be read to implicate the minor Plaintiff's Fourteenth Amendment familial and associational rights. [10] In *Doswell v. City of Pittsburgh*, 2009 U.S. Dist. LEXIS 51435, at **39-42 (W.D. Pa. June 16, 2009), this Court rejected a minor's claim that the defendants violated his constitutional rights by wrongfully causing his parent's conviction and incarceration. In that context, the Court observed that the Fourteenth Amendment protects only against state action "specifically aimed at interfering with protected aspects of the parent-child relationship." *Id.* at *43. Therefore, due to the absence of any suggestion that the defendants' actions targeted the parent-child relationship, the Court dismissed the claims. *Id.* at *42-43. Here, aiming at the parent-child relationship is not among the host of motivations explicitly assigned to Defendants; nor do the allegations of the Second Amended Complaint allow any reasonable inference as such.

---

[10] Other than the potential implication of familial and associational rights, the remainder of the Second Amended Complaint alleges violations of constitutional rights belonging solely to the adult Plaintiff, and acts directed solely toward the adult Plaintiff. As the Court reads the Second Amended Complaint, the pleading lacks any averments that directly involve a violation of any other right belonging to the minor Plaintiff.

Absent a clearly identified underlying violation of the minor Plaintiff's constitutional rights, and its relationship to a clearly identified municipal policy or custom, Counts VI and VII of the Second Amended Complaint fail to state claims on behalf of the minor Plaintiff. Thus, those claims will be dismissed. In regards to the minor Plaintiff's remaining claims, set forth in Counts VIII through X of the Second Amended Complaint, Defendants' Brief in Support of their Motion to Dismiss does not address those claims. Therefore, those claims will not be dismissed.

### E. REMAINING CLAIMS

Of the Plaintiff's claims asserted on her own behalf, remaining are her individual capacity claims against Defendants Regina McDonald, Antonio Ciummo, Alisa Duncan, and Leonard Duncan. Accordingly, the Court briefly addresses Defendants' arguments that those claims fail, for various reasons, under Rule 12(b)(6).[11]

The Court agrees that Plaintiff's Fourteenth Amendment claim for equal protection, identified in Count IV, is deficient. An equal protection claim requires proof of differential treatment on an improper basis. *See*, *e.g.*, *Hayes v. United States*, 2014 U.S. Dist. LEXIS 107254 (M.D. Pa. Aug. 5, 2014). Accordingly, a conclusory reference to "selective enforcement" is insufficient to withstand a motion to dismiss. *See*, *e.g.*, *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 239 (E.D.N.Y. 2014). The Court rejects Defendants' arguments, however, that Plaintiff's claims in Count I for First Amendment retaliation; Counts III and XII for malicious prosecution; Count V for due process; and Counts II and XI for false arrest and imprisonment, are insufficiently pleaded. At this early stage in the litigation, and under applicable Rule 12(b)(6) standards, Plaintiff's allegations suffice. Defendants' contentions, some of which rest on facts not yet established, are more properly assessed after

---

[11] Because judgment will be entered in favor of the City of Pittsburgh, the Court does not need to address Defendants' contentions that Plaintiff fails to state *Monell* claims.

discovery. Therefore, Count IV will be dismissed, without prejudice. Defendants' Motion to Dismiss will be denied as to Counts I, II, III, V, XI, and XII, without prejudice to Defendants to reassert their arguments at a later stage in this litigation.

## CONCLUSION

In sum, Plaintiff's claims in her own right, as set forth in the Second Amended Complaint against the City, and Defendants Harper and Huss, as well as the official capacity claims against the remaining Defendants, are barred by the Release. Accordingly, those claims will be dismissed with prejudice. The minor Plaintiff's claims in Counts VI and VII, and Plaintiff's claim in Count IV, will likewise be dismissed for failure to state a claim, despite two amendments.[12]

Accordingly, remaining extant at this time are Plaintiff's individual capacity claims, other than the equal protection claim in Count IV, against Defendants Regina McDonald, Antonio Ciummo, Alisa Duncan, and Leonard Duncan, as well as the minor Plaintiff's claims set forth in Counts VIII through X.

Appropriate Order to follow.

_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record

---

[12] At this stage, based on the pleadings, in this Court's estimation, it would be futile for these claims to continue. _See Poulis v. State Farm Fire & Cas. Co._, 747 F.2d 863 (3d. Cir. 1984).